## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 19-CR-10087-GEB |
| BRANDON STEVEN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Early Termination of Probation **(ECF No. 16)**, the United States of America's Response (ECF No. 17), and Defendant's Reply (ECF No. 18). After careful consideration, the Court **DENIES** Defendant's Motion for Early Termination of Probation.

**I.    Background**

On June 13, 2019, Defendant was charged with one count of Accessory After the Fact to Transmission of Wagering Information in violation of 18 U.S.C. § 3, a Class A Misdemeanor carrying a maximum penalty of one-year imprisonment.[1] Shortly thereafter, Defendant and the United States entered into a Plea Agreement whereby Defendant agreed to plead guilty and the United States agreed to recommend the Court impose a lesser sentence.[2]

---

[1] *See* ECF Nos. 1 and 12 at ¶ 1.
[2] *See* ECF No. 12.

On June 18, 2019, Defendant appeared before the Court and entered a guilty plea.[3] The Court accepted Defendant's plea and adopted the sentencing recommendation set forth in the Plea Agreement.[4]  Thus, on June 18, 2019, Defendant was sentenced to serve three years of supervised probation, perform 200 hours of community service, pay a $1,095,000.00 forfeiture judgment to the United States representing the property Defendant derived from proceeds traceable to his criminal conduct, and to pay an additional $25.00 criminal monetary penalty.[5]

On April 8, 2020, after serving ten months of probation, Defendant filed the present Motion asking the Court for an early termination of his probation.  Defendant argues this admittedly extraordinary request is necessary due to the COVID-19 pandemic currently engulfing our county.  Defendant states his businesses may be eligible for government aid which he cannot apply for due to his status as a federal probationer.  Without such government assistance, Defendant states his businesses and employees will be harmed.  Defendant insists his request for early termination is also assisted by the fact that he has paid all sums of money due under his sentence, has performed 183 hours of his 200-hour community service obligation, has had no significant violations of probation, and has remained gainfully employed.[6]

---

[3] ECF No. 8.
[4] ECF Nos. 8 and 13.
[5] *Id.*  Defendant was also sentenced to other mandatory and standard terms of probation.  *See* Judgment at ECF No. 13.
[6] *See* ECF No. 16.

The United States opposes Defendant's Motion arguing it is unlikely Defendant's businesses would qualify for government aid despite his probationary status, and given this, the interest of justice would not be satisfied by terminating Defendant's probation after only ten months served.[7]

Pursuant to Fed. R. Crim. P. 32.1(c), the Court must hold a hearing regarding any modification to a sentence of probation unless such hearing is waived.  In his Motion, Defendant waived his right to a hearing.[8]  Thus, the Court will address Defendant's Motion based on the written briefs and applicable law.

Before moving forward in its analysis, however, the Court notes it could consider Defendant's Motion moot because the federal government announced the appropriations allotted for the government aid at issue have lapsed.  Indeed, the Small Business Administration announced it is not accepting new applications at this time.[9]  However, due to the possibility Congress will appropriate more funds to the program, and given the potential effect Defendant's Motion has on his employees, the Court feels it prudent to address the merits of Defendant's Motion accordingly.

## II.     Legal Standard

Early termination of probation is governed by 18 U.S.C. § 3564(c).  This statue provides after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court may "terminate a term of probation previously ordered and

---

[7] *See* ECF No. 17.
[8] *See* ECF No. 16 at p. 5.
[9] *Notice: Lapse in Appropriations,* https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program-ppp (last visited April 17, 2020).

discharge the defendant at any time in the case of a misdemeanor" if "it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice."

The Court considers the factors found at 18 U.S.C. § 3553(a)(1), (2), (3), (4), and (6) applicable. It will address those factors, along with Defendant's conduct and the interest of justice in Section III.C. below. But before doing so, the Court will discuss the government aid at the center of Defendant's Motion and the party's respective positions regarding Defendant's request for early termination of probation.

### III. Defendant's Motion for Early Termination of Probation (ECF No. 16)

#### A. Paycheck Protection Program

On March 27, 2020, in response to the economic fallout from the COVID-19 pandemic, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was passed and signed into law.[10] Section 1102 of the CARES Act temporarily adds a new product, titled the ''Paycheck Protection Program,'' to the U.S. Small Business Administration's (SBA's) 7(a) Loan Program.[11] The Paycheck Protection Program (PPP) authorizes billions in forgivable loans to small businesses to pay their employees during the COVID-19 crisis.

---

[10] Pub. L. 116-136.

[11] *Id.* at § 1102. The SBA's 7(a) loan program can be found at 15 U.S.C. § 636(a). The SBA received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID–19 emergency. *See* Business Loan Program Temporary Changes; Paycheck Protection Program (Interim Final Rule), 85 Fed. Reg. 73, 20811 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

Businesses with 500 or fewer employees are eligible for PPP funds. However, businesses in certain industries can have more than 500 employees and still be eligible if they meet the applicable SBA employee-based size standards for that industry, are a small business concern as defined in the Small Business Act,[12] and meet the SBA's affiliation rules[13] unless such affiliation rules are specifically waived by the CARES Act.[14] As relevant here, the CARES Act waives these affiliation rules with respect to any business concern operating as a franchise that is assigned a franchise identifier code by the SBA.[15]

The intent of the CARES Act is for the SBA to provide relief to America's small businesses expeditiously, which is expressed in the Act by allowing the SBA to guarantee 100 percent of the loans, by giving all lenders delegated authority, and by streamlining the requirements of the regular SBA 7(a) loan program.[16] Under the regular SBA 7(a) loan program, federal regulations provide that a business is ineligible if an owner of more than 20 percent of the equity "is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude"[17] Regarding business owners on probation, this restriction on eligibility has been retained for PPP loans as made clear by the SBA's recently enacted Interim Final Rule ("Rule"). The Rule states an applicant is ineligible for a PPP loan if:

---

[12] *See* 15 U.S.C. § 632(a).
[13] The affiliation rules can be at 13 C.F.R. § 121.301.
[14] *See* SBA's Interim Final Rule, 85 Fed. Reg. 73 at 20812.
[15] *See* Pub. L. 116-136 at § 1102.
[16] *See* SBA's Interim Final Rule, 85 Fed. Reg. 73 at 20812.
[17] 13 C.F.R. § 120.110(n); 13 C.F.R. § 120.10(2)(i).

> **[A]n owner of 20 percent or more of the equity of the applicant is** incarcerated, **on probation**, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony within the last five years.[18]

The Rule became an effective federal regulation on April 15, 2020 with its publication in the Federal Register.[19]  Congress gave the SBA authority to issue such regulations to implement the PPP in Section 1114 of the CARES Act.[20]

### B.      The Parties' Positions

The above regulation preventing business owners on probation from applying for PPP funds is the impetus for Defendant's request for early termination of his probation. Defendant states this regulation prohibits him from applying for much needed PPP funds. Defendant represents he owns several businesses that when combined employ approximately 6,329 employees.  However, due to the economic downturn caused by the COVID-19 pandemic, Defendant has furloughed 3,941 employees and fears more are soon to follow.  Defendant argues but for his status as a federal probationer, his businesses may be eligible for PPP funds.  Defendant anticipates that if he can be released from probation and if he can receive funds through the PPP, he could rehire his furloughed employees and retain his current employees.  Defendant argues the economic harm to his businesses and employees as result of the COVID-19 pandemic necessities his admittedly unusual request to terminate probation after serving just ten months of a three-year term.[21]

---

[18] *See* SBA's Interim Final Rule, 85 Fed. Reg. 73 at 20812 (emphasis added).
[19] *Id.* at 20811.
[20] Pub. L. 116-136 at § 1114.
[21] *See generally* ECF No. 16.

The United States opposes Defendant's request for early termination based on the short time Defendant has been on probation and Defendant's probable inability to qualify for PPP funds due to the employee-based size of his various businesses. Because Defendant admits his combined businesses employ over 6,000 employees, the United States argues notwithstanding Defendant's probationary status, his businesses are likely ineligible for PPP funds under the affiliation rules. The United States reasons such because due to Defendant's ownership stake in each of his businesses, they are likely affiliated and exceed SBA size standards.[22] Defendant replies his businesses may still be eligible for PPP funds as franchises for which the affiliation rules have been waived.[23]

### C. Application of Legal Standard

With the above backdrop regarding the PPP and the parties' arguments in place, the Court turns to addressing whether Defendant's request for early termination should be granted under the legal standard set forth in Section II. The Court will address whether the interest of justice, Defendant's conduct and the applicable 18 § USC 3553(a) factors warrant early termination of Defendant's probation.

#### 1. Interest of Justice

The United States argues "terminating [Defendant's] sentence less than 1/3 of the way into its term does not satisfy the ends of justice" when so much uncertainty remains regarding whether Defendant will, despite his probationary status, even qualify for PPP

---

[22] *See generally* ECF No. 17.
[23] *See generally* ECF No. 18.

funds.[24]  Defendant responds the CARES Act presents unknowns for all business applicants.  Defendant states he "is simply asking for the ability to submit an application in which he is not immediately disqualified for being on probation" and that if "the application is rejected under the amended affiliation rules, then, [Defendant] accepts that outcome."[25]

As the parties point out, it is uncertain whether Defendant's businesses will be eligible for PPP funds if Defendant's probation is ended and he is allowed to apply for a loan.  But that is not the issue before the Court, nor is it within the Court's jurisdiction to make such a decision.  What is known and certain, however, is the SBA, through the authority given to it by Congress in the CARES Act, implemented a regulation making businesses with owners on probation ineligible to receive PPP funds.[26]  This regulation appears to be a continuance of the regulation enacted for regular SBA 7(a) loans, which was in place before Defendant was sentenced to probation.[27]

Federal regulations have the force of law,[28] and if the law is clear, the Court should abide by its language.[29]  The regulation here is clear that business owners[30] on probation

---

[24] ECF No. 17 at p. 4.
[25] ECF No. 18 at p. 2.
[26] *See supra* notes 18 and 20 and accompanying text.
[27] *See supra* note 17 and accompanying text.
[28] *See, e.g., Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1247 (Fed. Cir. 2015) (stating the SBA is authorized to engage in rulemaking and its regulations "have the force and effect of law"); *see supra* note 20 and accompanying text.
[29] *See, e.g., Resolution Tr. Corp. v. Westgate Partners, Ltd.*, 937 F.2d 526, 531 (10th Cir. 1991) (stating courts should follow the literal language of the law when it is clear and not ambiguous when given its ordinary meaning).
[30] At least business owners of 20 percent or more of the business's equity.  *See supra* note 18 and accompanying text.

are not eligible for PPP funds. If Congress wished to waive this requirement, it could have done so just as it waived the affiliation requirements for franchises or allowed non-profit businesses to be eligible for PPP loans when they otherwise are ineligible for regular SBA 7(a) loans.[31]

While the Court is sympathetic to the detrimental effect the COVID-19 pandemic has had on Defendant's businesses and his employees, it notes these afflictions are unfortunately not unique to Defendant. Businesses across the county have lost revenue and been forced to lay off employees during this trying time. This is precisely the reason the CARES Act was enacted−to provide economic relief to small businesses nationwide adversely impacted by the pandemic. However, Defendant, just like every other small business owner across the country on probation, is prohibited by the clear language of the regulation from applying for PPP funds. The legislative branch, not the judicial branch, makes the laws.[32] Thus, the Court cannot endorse Defendant's request to circumvent federal regulations.[33] Defendant's remedy lies with Congress, not with this Court.[34]

---

[31] *See supra* note 15 and accompanying text; *see also* Business Loan Program Temporary Changes; Paycheck Protection Program (Interim Final Rule), 85 Fed. Reg. 73, 20817, 20819 (April 15, 2020) (to be codified at 13 C.F.R. pt. 121) (stating that prior to the CARES Act, nonprofit organizations "were not eligible for SBA Business Loan Programs under section 7(a) of the Small Business Act; only for-profit small business concerns were eligible. The [CARES] Act made such nonprofit organizations . . . eligible for the PPP . . . .").

[32] *See Resolution Tr. Corp.*, 937 F.2d at 531 (citing U.S. Const. art. I, § 1).

[33] *See id.* ("The words chosen by Congress are a restraint upon the courts, and if we are not tethered by them in all but the most compelling of cases, then there is left no restraint effectively to corral the power of the courts from substituting their judgment of proper public policy for that of the legislatures.").

[34] The Court notes that although the SBA's Interim Final Rule setting forth the ineligibility rules for business owners on probation became effective on April 15, 2020 with its publication in the Federal Register. The public may still make comments until May 15, 2020. *See* SBA's Interim Final Rule, 85 Fed. Reg. 73 at 20811.

Therefore, unless there is some independent reason making Defendant's circumstances extraordinary from other similar business owners on probation (and for the reasons stated below, the Court finds there is not), the interests of justice is not served by terminating Defendant's probation early.

### 2.  Defendant's Conduct

Defendant argues despite only serving ten months of his three-year probation, early termination is warranted based on his conduct. Defendant states he has paid all sums of money due under his sentence, has performed 183 hours of his 200-hour community service obligation, has had no significant violations of probation, and has remained gainfully employed. While the Court commends Defendant for being proactive regarding his sentence, this conduct is not exceptional such that it requires early termination of probation. It was ordered by the Court, and compliance is expected.

### 3.  Applicable 18 U.S.C. § 3553(a) Factors

Regarding the 18 U.S.C. § 3553(a) factors, the Court considers the factors found at § 3553(a)(1), (2), (3), (4) and (6) applicable to the present situation. Each is discussed below.

Under § 3553(a)(1) and (2) the Court, as relevant here, should consider (1) the characteristics of the offense and the Defendant and (2) whether the sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense and deters other criminal conduct.

After analyzing these factors, the Court determines terminating Defendant's probation early would not reflect the characteristics of Defendant's offense or promote

respect for the law.  Defendant freely and voluntarily plead guilty to a crime in open court. By doing so, Defendant admitted he committed the offense he was charged with and accepted responsibility for his actions.  Part of accepting responsibility for his actions is completing his agreed-upon probation term.  Terminating Defendant's probation after ten months served would downplay the seriousness of Defendant's criminal conduct and would avoid providing just punishment for the offense.  Additionally, terminating a probation sentence after such a short time served would send the wrong message to would be offenders.

Under § 3553(a)(3) and (4), the Court should consider the kinds of sentences available and the applicable sentencing range for Defendant's crime.  Here, Defendant's sentence was the result of the Plea Agreement he freely entered into with the United States. Defendant choose to plead guilty, and in doing so (and in conjunction with the United States), requested the Court to enter a sentence that was a downward departure from the guideline range.  The Court could have imposed jail time or a five-year term of probation.[35] However, based on the representations made by both parties during the June 18, 2019 hearing, the Court entered a sentence in line with the Plea Agreement, finding a three-year term of probation sufficient, but not more than necessary, to accomplish the goals of sentencing.  Terminating Defendant's probation as requested would be a further departure from the sentencing guidelines, which in this Court's opinion would not accomplish the goals of sentencing.

---

[35] *See* ECF No. 12 at ¶ 1; 18 U.S.C. § 3561(c)(2).

Defendant cites *United States v. Milikowsky*[36] as an example of a case where the court granted a downward departure of the defendant's sentence based on the extraordinary hardship imprisonment would have on the defendant's employees. Defendant's request in this case is distinguishable in two ways. First, Defendant is asking the Court to terminate his probation. Meaning if the Court grants Defendant's Motion, his sentence is complete. The defendant in the cited case received a downward departure of his sentence, which Defendant here has already received by a grant of probation in lieu of imprisonment. The Court is mindful that final sentences, especially ones which have not been half-way completed, should not be terminated lightly.

Second, the *Milikowsky* court granted relief based on extraordinary circumstances−mainly that the defendant was the only one with the knowledge and skill to run his businesses, meaning defendant's imprisonment would lead to employee job loss. Here, Defendant's probation does not prohibit him from running his businesses, nor does Defendant state he is the only person who can do so. Defendant's issue is with the SBA rule prohibiting him from being eligible for PPP funds due to his probationary status. While our country is no doubt in extraordinary times, Defendant's situation is not extraordinary from every other small business owner across the county who is prohibited from obtaining a PPP loan due to the consequences of criminal conduct.

Finally, under § 3553(a)(6), the Court should consider the need to avoid unwarranted sentencing disparities. The Court determines that granting Defendant's

---

[36] 65 F.3d 4 (2d Cir. 1995).

Motion would create a sentencing disparity which is undesirable under § 3553(a)(6). As stated above, mere compliance with probationary terms, although sometimes considered, does not always justify the early termination of probation. And, in regard to the CARES Act, all business owners on probation are treated equally in that all are ineligible for PPP funds. The Court is conscious of the unprecedented magnitude of the COVID-19 pandemic and its economic consequences for businesses across the country. However, Defendant is no different than every other business owner on probation who is prohibited from seeking PPP funds. Thus, other similarity situated defendants would not receive the same relief Defendant requests.

**IV.    Conclusion**

This Motion weighed heavy on the Court. The Court did not consider it lightly and analyzed the parties' positions and the applicable law carefully and cautiously knowing that its decision would impact the livelihood of Defendant's employees. However, the Court is duty-bound to follow the clear language of the law. Here, the SBA regulation is plain in its prohibition of business owners on probation from obtaining PPP funds. Defendant is in the same position as every other small business owner throughout the country on probation. And, without more, the Court under the legal standard set forth in 18 § U.S.C. 3564(c) cannot terminate Defendant's probation early.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Early Termination of Probation (**ECF No. 16**) is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 17th day of April, 2020.

                                                s/Gwynne E. Birzer
                                                GWYNNE E. BIRZER
                                                United States Magistrate Judge